Mr. Pagel Good morning. May it please the court, opposing counsel, I'm Brian Pagel, I represent Karen Smith in this action against Capital One and Cone Law Firm. This is a very, very narrow issue of law that has a rather broad ranging impact on the protections afforded to a debtor in bankruptcy court. The overall scheme of bankruptcy is to protect a debtor from all kinds of harassment and all kinds of sort of pecking at the debtor from various sides, not just for the protection of the debtor alone, but for the protection of all creditors. And the action is particularly meant to protect, in this case, a debtor from being burdened by actions which take place outside of the bankruptcy court and without the supervision of bankruptcy court. So what happened here is when Ms. Smith files her bankruptcy petition, lists Capital One as a or contending that it has a debt owed solely by Ms. Smith's husband, files a separate lawsuit outside of the bankruptcy court. Weren't there two Capital One debts in the Smith family, one that was hers and one that was his? Capital One and the Cone Law Firm contend that there were, but that is not a matter that's of record at this point. What we know in the record is that Ms. Smith scheduled a Capital One debt and that the party stipulated that Mr. Smith, Daniel, had a Capital One debt on which both parties could be held liable because it was a marital debt incurred entirely during the time. Wisconsin strikes again in its unique statutes with regard to community property state or whatever. Well, the Wisconsin community property statutes, as much as they're understood to be beneficial to debtors, are actually primarily intended to benefit creditors and that's partially what's at issue in this case. This lawsuit probably wouldn't have arisen in Illinois or Indiana is what I'm saying. I'm not familiar enough with Illinois or Indiana to say so, but I do see a lot of this in Wisconsin. So I think it might be a problem unique to Wisconsin that Wisconsin allows creditors to overreach in this way. And that's what we really feel happened here is that Capital One essentially ambushed Ms. Smith with this debt, filed an action, obtained a judgment. That judgment, while not executed yet, in and of itself presents a threat. And it couldn't be executed as long as the plan's in place because of the stay, correct? It couldn't be executed against any property she owns. It could not be executed against property Ms. Smith owns, that's correct, but Ms. Smith could still be burdened by the existence of the judgment itself. The judgment itself gives the creditor the right to engage in supplementary examinations of a debtor, to compel Ms. Smith to come and answer questions about Mr. Smith's assets under the Courtyard Condominium v. Draper case. So right there she was faced with the prospect of being dragged down to a court commissioner's office and forced to answer questions and provide documentation that otherwise was beyond the reach of the creditor, absent going through a Bankruptcy 2004 examination, which would be supervised by the Bankruptcy Court. In your Schedule H to the bankruptcy petition, Ms. Smith affirmatively stated, and the defendant notes this in its brief, that she had no co-debtors. How do you square that with the position you're taking here? I can't exactly say what was in the mind of Bankruptcy Counsel at that point. I was not the bankruptcy lawyer. We came in at the appeal, but when you read the explanation for when to schedule a co-debtor and when not to schedule a co-debtor, there's some things you do not list a co-debtor if they're a husband. And to be honest, the very first time I read that through, I read it as, you would not need to list Daniel Smith. And it wasn't until I read it through a second time just to make sure that I realized, no, under the facts of this case, you probably should have listed Daniel Smith. So shouldn't she be estopped from claiming something different? Well, you would only be estopped if Capital One relied on the failure to list Daniel as a co-debtor to its detriment. And Capital One has not argued, or Cone Law Firm has not argued in any way, that Schedule H somehow misled them. And I think what was going on here was Capital One and Cone Law Firm expressly did not want to bring up the co-debtor issue and wanted to see this as an ambush, because Section 1301 allows for an orderly resolution of this claim. So with Capital One and Cone saying, we don't think this is the same debt that Daniel owed as the one that was there and scheduled, and with them saying, we don't think this is in any way affected by the co-debtor's stake, the bankruptcy code makes very clear that there's a way around that. You file a motion for relief from stay, you prove that one of the three conditions is met, either Daniel is the primary obligor or it's not going to be paid, and the court shall grant relief from stay. So upon that hearing, the bankruptcy judge is going to say, well, if you're right, Capital One, I shall grant relief from stay. Then there's no question of ambushing Ms. Smith, there's no question of placing undue pressure on her, and it does allow for Ms. Smith to then amend her claims to provide for payment of that to avoid disclosure. In terms of that pressure, has any of that happened? It has not yet, but the bankruptcy code doesn't require you to take further egregious action before the co-debtor's stay is implicated. And I do want to note, in addition to the supplemental examination, the other thing that creditors can do once they get a judgment in Wisconsin is get an execution against property. And in an execution against property, a sheriff's deputy is going to go to the Smiths' house, he's going to go inside, and he's going to seize any personal property he sees that's not exempt. Now the exemption has to be claimed by the debtor only after seizure, which means that what really happened here is Ms. Smith is at risk of being dragged to a court commissioner's office, as I mentioned, by court order, punishable by contempt of a state court, or of having armed deputies come into her house. Why wouldn't that violate the stay if Capital One did that? If they're not taking her property or threatening Ms. Smith, it wouldn't necessarily violate the stay. If the deputy comes in, he could ask Ms. Smith, is this yours or Daniel's? If she says it's Daniel's, he can take it, and there's arguably no violation of the stay. But I think we can all agree that it appears to be a tremendous imposition on a debtor in bankruptcy to have a deputy walking around with a writ of execution signed by a state court in her house and putting the burden on the debtor, Ms. Smith, to explain or know what might be individual property and explain or know what might be exempt from seizure on Daniel's behalf. And that's exactly what the co-debtor stay is designed to avoid. Again, we go back to there's a process for this that Capital One did not invoke in any way. So they only come after the fact and say, well, we think after the fact, this wasn't in fact protected by the co-debtor stay. I think to the extent that you're looking at how to interpret the bankruptcy code, one of the issues we have is that the bankruptcy code is very clear on what is a debt of the debtor, a consumer debt of the debtor. The district court in this case, and with all respect to the district court, he's a very learned judge, he went beyond what the plain meaning of the statute would even be. And that's why it was so, I think, astounding to Ms. Smith and her counsel that this would happen because when you talk about a consumer debt of the debtor under the co-debtor stay, you've got these three factors. Does the debtor owe the money? Does the co-debtor owe the money? Is it a joint creditor? And all of those are clearly met here. There's not even an argument that there can't be. Capital One and Cone have to stretch the meaning of Wisconsin law simply to argue that They argue that because they weren't seeking a claim against her that she couldn't be a co-debtor. But under Wisconsin law, it's very clear that since Wisconsin became a state, and maybe this is what the justice was getting at, spouses have been responsible for their debts. And when you look at the St. Mary's v. Brody case, what the Wisconsin courts have said is this responsibility isn't somehow secondary. There is a direct liability in St. Mary's v. Brody. A woman who had divorced her husband was held directly liable for the medical bills her husband had incurred before their divorce. But that was because of medical bills, wasn't it? I mean, wasn't that the reason for that ruling? Medical bills are particularly within the duty of support owed under Wisconsin's marital property laws, 766-55. But the duty of support extends beyond medical bills. And as the Buckstaff case made clear, the duty of support goes to anything that might arguably be necessary for the spouse given their position. And so here, arguing that this is a credit card as opposed to a medical bill is a non-starter in Wisconsin courts. Wisconsin doesn't make those kinds of distinctions. The question is, is it incurred as part of a duty of support for the family? Is there any evidence of that in the record? No. The parties stipulated below that it was simply a credit card that was incurred for personal, family, or household reasons. So to the extent that there's a question about whether this was a support or non-necessary item, the court would be better off remanding back for an evidentiary hearing or trial on that matter. Let me ask you one other thing. Where did you raise the Doctrine of Necessaries, either in the bankruptcy or district courts? The Doctrine of Necessaries was not raised or discussed in the bankruptcy court. It was not discussed in the briefing to the district court because it wasn't until the judge made his ruling that the idea of whether this was necessary became something that was at issue. The judge held that there was no personal liability on Ms. Smith's part, and that was an argument that Capital One has argued too. That's not in the stipulated facts. So the judge made a ruling that there was no personal liability. Before that, no one had argued that, and that made it necessary to explain to this court why the personal liability arises. And just if I may complete the answer very briefly, the Doctrine of Necessaries carries through to 766.55. As well explained by the Brody case, it was codified under 765.001, which broadened out the scope of the statute to include both husband and wife. And then the manner in which courts are to interpret what claims may be made was separated under 766.55. So this isn't as though there's two separate but parallel paths of law. They are essentially one branching doctrine in Wisconsin from the original necessary doctrine to the current duty of support under 766.55. Thank you. Mr. Hale. Good morning, and may it please the court. My name is Jared Hale on behalf of the Appalese. The district court's decision should be affirmed because the co-debtor stay established under Section 1301 of the Bankruptcy Code requires that the debtor have personal liability on a consumer debt with a co-debtor. In this case, the debtor has no such personal liability. The debtor's interest in community or marital property, even though it can be used to satisfy the debt of an incurring spouse, does not equate to personal liability. The difference between actual personal liability and a mere property interest, even when that interest can be subject to foreclosure on someone else's debt, is fundamental in bankruptcy proceedings and outside of bankruptcy proceedings that there is a difference between actual personal liability and liability of one's property. The plain language of Section 1301 requires that the debtor must have personal liability for the co-debtor stay to apply, as there must first be a consumer debt of the debtor. The district court was correct that this phrase does not include or encompass claim against the debtor, which is a separate defined term within the code. Though instructive, there really is no need to assess legislative history and the underlying purpose behind this different phrasing. The simple fact is that Congress chose not to purposefully use the broad phrases claim against the debtor, despite using that phrase and that defined term within the code 20 other times in the Bankruptcy Code. Further, and perhaps even more importantly to this set of facts, Congress also chose not to include the defined term community claim, which is in 1017 of the Bankruptcy Code. This would have specifically addressed the fact pattern currently before this court, but again, Congress chose not to use that defined term in 1301. Those were two defined terms, both used throughout the Bankruptcy Code, that could have been used in 1301 to make the co-debtor stay applicable to these facts before the court today, but those terms were omitted. That was purposeful on behalf of Congress. Consumer debt of the debtor means personal liability. When you look at the difference between actual personal liability and liability of property or a property interest in a community property situation, one example is that of a grant of a security interest. It's fundamental in both bankruptcy and non-bankruptcy law. The one who simply pledges property in support of another's obligation risks losing title or possession of the collateral pledged in the event of the actual obligor's default. But the pledgeor of the property cannot be held to be personally liable on the debt for its deficiency or otherwise. For instance, a mortgage in which there are two persons on a mortgage, but only one on the note. Certainly the mortgage property can be foreclosed upon in the event of default, but only the individual that executed the note actually has personal liability. Only that individual could suffer a deficiency judgment, for instance. Possessory interests are another example. One may maintain a possessory interest in collateral that an actual obligor has pledged and lose that possessory interest upon an obligor's default. No personal liability arises. This is fundamental both inside and outside of bankruptcy law. Now, the appellant asserts that the doctrine necessary creates the requisite personal liability. Now, while we disagree with that argument as a matter of law, there is no reason to assess it in this case because that argument has been waived by both parties, and I think this is particularly interesting. The debtor raises this argument for the first time in this appeal, meaning it is waived and this court should not consider its merits. However, there is a more important aspect of waiver, which is much more fundamental to this case. The debtor waived her argument to assert that she has personal liability when she failed to schedule Capital One and her husband as a co-debtor, both in her schedules and her statement of financial affairs. Those two documents both state that if you believe there is a co-debtor and in particular state that if you are married and in a community property state, and it specifically lists Wisconsin, that the debtor must check the box of a co-debtor. Those were not checked. Not only were those not checked when the scheduled statement of financial affairs were filed, they were subsequently amended and still not checked. She clearly never believed that she had personal liability on that debt and in any event has waived the opportunity to assert that now. The court's confirmation order confirming her Chapter 13 plan confirmed a plan in which the debtor did not include Capital One as a creditor on this debt. She had the opportunity to file a claim on Capital One's behalf. That is allowed under the 3,000 Rules of Bankruptcy Code. She did not do so. She did not schedule. She did not include in financial affairs. She did not file a claim. She did not include it in the plan. And then a confirmation order was entered, thereby stopping any assertion that there is personal liability on this debt, and that argument is waived. For its part, interestingly, Capital One has also waived any right to assert personal liability against the debtor under the doctrine of necessaries or otherwise. Capital One did not file a claim on this debt. Going to Your Honor's question earlier, there were two alleged Capital One debts listed by the debtor in her Schedule F. Only one, neither, of course, did she list a co-debtor with her husband. One was, I believe it was, a Kohl's credit card account, which is a private label card that Capital One has. And the other was her husband's account only listing the last four digits of that code. Again, neither listing a co-debtor. Capital One filed a claim on that Kohl's account. That is an account that, without dispute, she is personally liable on. That claim is included in the plan, as it should be. The claim Mr. Smith's debt is not included in the plan, and Capital One did not file a claim on it. Was she represented in the bankruptcy? I believe she was, Your Honor. Okay. So the plan, having been confirmed by the court's confirmation order, prevents and actually bars, it stops Capital One from ever asserting any personal liability against the debtor on that debt under any theory, doctrine of necessaries or otherwise. Both parties have waived the right to assert that the debtor bears personal responsibility. Therefore, the doctrine of necessaries is inapplicable. Again, we disagree with the debtor's analysis of the law as it relates to the doctrine of necessaries, but we never have to get there. All parties have waived it. With that, Your Honor, if there are any questions, thank you very much. Thank you. Thank you, Mr. Hale. Mr. Pago, I think your time has expired, but you may have two minutes. The phrase claim against the debtor is defined in both the statutes and in the Falsgraf case. It's repeatedly said to be including both personal claims against the debtor and claims against the debtor's property. That's 11 U.S.C. 102. A consumer debt of the debtor includes the phrase consumer debt. At 101 sub 8, 11 U.S.C., debt is defined as liability on a claim, and consumer debt is defined as a debt incurred for a family, et cetera. So the only way to read consumer debt of the debtor is to read it as liability on a claim incurred for personal, family, or household purposes owed by the debtor. That is exactly what they stipulated the Capital I debt to be, a debt incurred for personal, family, or household purposes, which Smith Smith is arguably liable on under the Doctrine of Necessaries. Counsel stated a lot of claims about what could have or should have or did happen in the bankruptcy, but the bottom line remains, if they believed this debt was not covered by the schedules, they had the option of filing a motion for relief from stay, and upon convincing the bankruptcy court of that, the bankruptcy court was mandatorily required to do so. They opted for the riskiest possible path, and the bankruptcy code makes clear that to protect the debtor, you should not allow undue pressure placed on them. The district court paraphrased this as perhaps Ms. Smith would prefer that her husband not be sued. Again, with all respect to the district court, I think that's a cavalier attitude towards how debtors look at lawsuits filed against their husbands. So what we have here is an admittedly consumer debt, a debt that admittedly Ms. Smith can be held liable for, that the creditor didn't bother to seek any permission from the bankruptcy court for clarification. They charged ahead, and now the bankruptcy court's conclusion is consistent with the plain reading of the law and with the way Wisconsin's courts have always interpreted this Marital Property Act. Thank you. All right, thank you. Thanks to all counselors. The case is taken under advisement, and the court will proceed to the sixth case, the United States case.